WILLIAM M. PARKS *vs.* MARY JANE INNES.

33b    37
j 73 AD¹298

An assignee of a residuary interest in the estate of a testator is bound to give notice to the executors or trustees holding the estate, of his assignment, in order to secure priority, and make the transfer effectual against subsequent assignees or purchasers in good faith, who perfect their title by notice.

A subsequent assignment will be preferred to a prior one, of which no notice has been given, if it has been received in good faith and perfected by notice to the trustees or executors.

BY the will of one Richard L. Ludlam, who died on the 3d day of April, 1838, leaving him surviving a widow and two infant children, Maximo M. and Anna R. Ludlam, all the residue of his personal, and all his real estate (by the will directed to be converted into personal estate) was to be equally divided in equal parts, share and share alike, between all his children and the lawful heirs of such as might have deceased, when his youngest surviving child should have arrived at the

age of 21 years, except one-third, in the event his widow yet survived, which one-third was thus to be divided at her death. The estate being given, devised and bequeathed to his executors in the mean time, upon certain trusts in the will specified, and which trusts under the existing state of facts were to, and did, as to the two-thirds, determine on the 8th day of December, 1858, at which date the youngest child of the testator Anna R. became of age. As to the remaining one-third, the trust does not determine until the decease of the testator's widow, who is now living. The share of Maximo in the two-thirds, as to which the trusts had determined, amounted, July 6th, 1859, to $3408.25. On the 4th October, 1855, Maximo being of lawful age, by an instrument under seal, purporting to be made upon a valuable consideration, assigned to the defendant Innes his share of the above mentioned two-thirds of his father's estate, to the extent of $3000. On September 24th, 1856, he mortgaged all his interest in his father's estate, to one George C. Hathorne, to secure the payment of $550, the purchase money of a horse and wagon sold to him by Hathorne, he at the time representing to Hathorne that he had made no other conveyance of the estate thus granted, and that the same was free and clear of incumbrances. On the 24th day of March, 1857, Maximo again assigned all his interest in his father's estate to the firm of B. G. Wilder & Co. as security for four promissory notes of Maximo, together amounting to $2500, and given for the purchase money of certain patent safes by said firm sold and delivered to him, he at the time making the same representations to said firm he had previously made to Hathorne, excepting that he informed them of the mortgage to Hathorne. By sundry mesne assignments the mortgage to Hathorne is now vested in the defendant Remsen, and the estate, or interest assigned to Wilder & Co., in the plaintiff. The defendant Innes gave no notice of her assignment to the executors, until at or about the time the trust as to the said two-thirds determined, and the same became payable. The defendant

Remsen, or his assignor Hathorne, gave notice soon after the execution of his mortgage, to the executors, and at the time of the transaction made inquiries of Silas Ludlam, one of the executors, as to previous assignments. The plaintiff, or his assignors, B. G. Wilder & Co., also gave like notice soon after their assignment, and at the time of the transaction made like inquiries of the same executor. The preceding are the uncontroverted facts of the case. The contest was between these assignments. On the part of the plaintiff and the defendant Remsen, an attempt was made, and certain alleged evidence was introduced, to impeach the assignment to the defendant Innes, for want of consideration, and the circuit judge decided that there was no consideration for it; and, on their behalf it was further contended that the fact that the defendant Innes did not give notice to the executors previous to their transactions with Maximo, gave their assignments a priority over the assignment of the defendant Innes, and the circuit judge decided that they had that priority. The defendant Innes resisted these claims, and appealed from that portion of the decision of the circuit judge, which found and decided that there was no consideration for her assignment, and adjudging and establishing the priorities as above stated.

*C. J. & E. De Witt,* for the appellant.

*G. T. Jenks,* for the respondent.

*By the Court,* EMOTT, J. There is but a single question in this case. That is, whether an assignee of such an interest as that of Maximo Ludlam in his father's estate, is bound to give notice of his assignment to the executors, in order to secure priority, and make the transfer effectual against subsequent assignees or purchasers in good faith who perfect their title by notice. Wilson and Harrington, through whom the plaintiff traces his title, paid value for the assignment which

they received, and took it after inquiry of the persons then holding the fund, and without any notice or knowledge of the previous transfer to the defendant Innes. This transfer, and the claim of the defendant Innes under it, were not known to the executors at that time, nor was any notice given by her to them until long afterwards. On the other hand, Wilder and Harrington gave immediate notice to the executors after the transfer to them, as they had made sufficient inquiry before. The same are the facts in regard to the assignment to the defendant Hathorne, and the judge before whom the cause was tried held upon these facts that the defendant Innes must be postponed both to Hathorne and the plaintiff, although her assignment is prior in time to either of theirs.

It is settled in the English courts that such is the rule. The doctrine is stated by a very able judge (Vice Chancellor Wigram) in *Meux* v. *Bell*, (1 *Hare*, 73, 84,) as having been clearly decided. His language is, " If a bona fide incumbrancer upon a fund, the legal interest in which is in a trustee, gives notice of his incumbrance to the trustee, and neither the incumbrancer giving the notice nor the trustee at the time of such notice being given has notice of any prior incumbrance affecting the fund, the incumbrancer giving such notice, so long as the circumstances of the case remain unaltered, will be entitled to priority over a prior incumbrance upon the fund, who has omitted or neglected to give notice of his incumbrance." That case was a contest as to the title to a bond, originally given to a woman before marriage, between the trustees of her marriage settlement on the one hand, and a creditor and assignee of the husband on the other. The latter attempted to gain priority for a subsequent assignment by proof of notice to the obligors. The case went off upon the insufficiency of the notice, but the principle of the whole class of cases is perhaps nowhere better stated than in the extract I have given from what was said by Sir James Wigram.

In *Foster* v. *Blackstone*, (1 *Myl. & Keen*, 297,) the master of the rolls, Sir John Leach, applied the rule to assignments

Parks *v.* Innes.

of an interest in a trust estate created by deed. His decision was affirmed in the house of lords, and Lord Lyndhurst delivered an opinion concurring in both the principle and its application. (9 *Bligh, N. S.* 332.) The latter distinguished judge had acted upon the same rules, when sitting in the court of chancery, in two earlier cases, which are perhaps the leading cases on the subject. (*Dearle* v. *Hall,* 3 *Russell,* 1, and *Leveridge* v. *Cooper, Id.* 30.) Sir Thomas Plumer had previously heard these cases as master of the rolls, and his opinions will be found to be exceedingly clear and copious. His judgments were affirmed by the lord chancellor.

In *Simson* v. *Ramsbottom,* (2 *Keen,* 35,) before Lord Langdale at the rolls, it was held that an assignee of a residuary interest who had not given notice of his assignment to the executors, would be postponed to a subsequent assignee who gave notice, and was ignorant of the previous transfer or incumbrance. That case very closely resembles the present, both in its circumstances and in the principle involved. *Elty* v. *Bridges,* (2 *Young & Coll.* 486,) before Sir J. C. Knight Bruce, V. C., is a case also very similar in its circumstances to the present. There the contest was between two assignees of a reversionary interest in a fund held in trust by an executor for the benefit of a lady named Freeman for her life, and at her death for the assignor absolutely. It was held that the second assignee or incumbrancer was entitled to a preference, in consequence of his having given the earliest notice of his assignment. There is also a still more recent case, in which Lord St. Leonards applied the same doctrine to a fund held by a trustee, and in which the assignor had a remainder expectant upon the death of his mother. (*In re, Atkinson's Trust.* 13 *Eng. L. and Eq.* 459.)

There is another class of cases in the English courts which must be adverted to in order to understand the principle thus asserted, and its limitations. These are cases of equitable interests in land. Thus in *Jones* v. *Jones,* (8 *Sim.* 633,) Sir Launcelot Shadwell, Vice Chancellor, expressly denied the

application of the rule to such interests or to real estate, and spoke of it as limited to equitable interests in the nature of choses in action.

Again, in *Wilmot* v. *Pike*, (5 *Hare*, 14,) Sir James Wigram, who so clearly expressed the rule in *Meux* v. *Hart*, said that the case of *Dearle* v. *Hall*, and that class of authorities, had no application to equitable interests in land. He refers to *Jones* v. *Jones* for an attempt to apply the doctrine of *Dearle* v. *Hall* to conveyances of such interests, which he says was properly refused by the vice chancellor, both upon the authority of cases and text books.

There is a leading case in this court which contains a still farther limitation of the doctrine we are considering. This is the case of *Muir* v. *Schenck*, (3 *Hill*, 228.) That was an action of debt on a bond, brought, as the law then required, in the name of the obligee, but for the benefit of one Doty, who had an assignment of the bond and of a mortgage which had been given to secure it. After the assignment to Doty, Muir, the obligee, made another assignment to one Austin; Austin gave notice of his assignment to the obligors, and received one payment from them, before either was informed of the assignment to Doty. After this, Doty gave notice of his assignment, to the debtors, but they, supposing that Austin had acquired a complete title to the chose in action by his prior notice, declined to recognize the assignment to Doty, and made a subsequent payment to Austin, upon which he acknowledged satisfaction of the bond and mortgage. It was held that this payment was wrongful, and that Doty could recover the amount unpaid upon the bond at the time that he gave notice to the obligor, notwithstanding the subsequent payment to Austin. As long as this case is recognized as authority, and we neither feel at liberty to question it, nor disposed to depart from it, we must hold that as between two assignees of a debt due the assignor, no priority can be obtained by giving notice to the debtor, although of course the want of such notice of a prior assignment is a protection to

Parks *v*. Innes.

the debtor for payments made in good faith to a subsequent assignee of the debt.

The reason of these exceptions to the doctrine of equitable priority will be seen by adverting to the ground upon which the doctrine itself is rested in the leading cases in which it is advanced, and which have been cited. That ground is that the transfer of the title is not complete until notice is given to the legal holder of the fund. "If you mean to make your right attach upon the thing which is the subject of the contract," said Sir Thomas Plumer, "it is necessary to give notice, and unless notice is given, you do not do that which is essential in all cases of transfer of personal property." Sir James Wigram said, in *Meux* v. *Bell*, "In the absence of notice the party claiming the prior incumbrance has not perfected his title. In a case where there cannot be an actual transfer of the subject, he must do all that is in his power ; and if he fails to do this, and another person takes an incumbrance and gives notice, the second person has acquired a perfect assignment, while the first equitable assignment remains imperfect." And Lord Lyndhurst, in affirming the judgments in *Dearle* v. *Hall* and *Leveridge* v. *Cooper*, used this reasoning : "Where personal property is assigned, delivery is necessary to complete the transaction, not as between the vendor and the vendee, but as to third persons, in order that they may not be deceived by apparent possession and ownership remaining in a person who is not in fact the owner. This doctrine extends to choses in action, bonds, &c. In cases like the present, the act of giving the trustee notice is in a certain degree taking possession of the fund ; it is going as far towards equitable possession as it is possible to go ; for after notice given, the trustee of the fund becomes a trustee for the assignee who has given him notice."

It was because there is a marked distinction by the law of England between personal and real estate, as to its tenure and transfer, that the English judges refused to regard any other priorities than those of time in cases of estates in the

latter.  " A personal chattel is held by possession, a real estate by title," was the language of the lord chancellor in *Hiern* v. *Mill*, (13 *Ves.* 119.)  The rule of law in regard to conveyances of land is that they take effect according to their priority in time, in the absence of any recording statutes.  A conveyance of land operates effectually without actual delivery of possession, and the transfer of the title is completed by it, not only as to the parties but all others.  Equity follows the law in respect to such conveyances, and gives the preference to priority in time, in the absence of actual fraud.  It is not a constructive fraud for a grantee of an interest in real estate to omit to give notice of his purchase, because he has acquired the whole title by his conveyance, and he is not called upon to do any farther act in order to invest himself with the complete ownership.  Constructive fraud, in such cases, can consist only in a party omitting to do something necessary to perfect his title, and thereby misleading a subsequent purchaser to suppose that the title still remains in the assignor. So also the application of similar principles to transfers of choses in action, that is bonds and other evidences of debt, or the debts which they represent, as these are regarded by the courts of this country, does not permit them to be governed by any rules of equitable priority.  The assignment of a legal chose in action of itself transfers the entire interest. The debtor is not a trustee, but a debtor merely.  His relation to the party to whom the debt is due, or to whom it is assigned, is not converted from that of a debtor to a trustee, by notice that the debt has become payable to an assignee. This is not the case in the instance of an ordinary debt, any more than in the indorsement of a negotiable instrument. All that is assignable in such cases passes completely by the assignment or by the indorsement, and no notice is requisite to perfect the title of the transferees in either case.

The present is the case of an assignment of a residuary interest in personal estate held by executors, and to be by them distributed to the legatees.  The legal title to the fund is

Parks *v.* Innes.

outstanding in the executors, and their only liability is to account as trustees to the parties entitled to it. They were not the debtors of Maximo Ludlam, but his trustees. What he assigned was not a debt due from them, nor any cause of action for which an ordinary suit at law would lie against them. It is true, that his estate was a legal remainder, in one aspect. But it did not confer upon him a legal title to the fund itself. If the fund was lent upon securities given, the debtors were not debtors to him, nor did the securities belong legally to him. It is not necessary in order to distinguish such a case from that of an ordinary chose in action, that the fund should be held upon a continuing trust, of which the legatee can take no benefit except as administered perpetually by trustees. Every executor is a trustee for those interested in the estate, and the interest of a legatee is an equitable interest, that is, he does not possess the legal title, and he can only resort to equitable remedies.

There are cases in which it has been held that where an assignor has money in deposit in a bank, it will pass by a general assignment, even without notice. But in such cases the depository is a mere debtor, liable to be sued as such, and entitled to protect itself by a payment to the first assignee by check or draft who presents his claim. I am of opinion that in such a case as the present, an assignee of a residuary interest in the estate of a testator does not perfect his title, as regards the trustees or executors holding the estate, or other assignees or claimants, until he gives notice of his assignment; and that a subsequent assignment must be preferred when it has been received in good faith and perfected by prior notice to the trustees or persons vested with the legal title to the fund.

The judgment of the court below should therefore be affirmed with costs.

[DUTCHESS GENERAL TERM, May 14, 1860. *Lott, Emott* and *Brown,* Justices.]